UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-cr-14034-MIDDLEBROOKS

UNITED STATES,

    Plaintiff,

v.

SAIFUL HOSSAIN, AHMED YEHIA
KHALIFA, and AHMED MAHER ELHELW,

    Defendant.

_____/

## SENTENCING ORDER

Defendant Saiful Hossain pleaded guilty to Counts I and II of the Superseding Indictment. Count I charges Hossain with conspiracy to import a controlled substance—XLR-11—in violation of 21 U.S.C. §§ 952(a) and 963. Count II charges him with conspiracy to manufacture, possess with intent to manufacture and distribute a controlled substance—XLR-11—in violation of 21 U.S.C. §§ 841(a)(1) and 846. (DE 84).

XLR-11, a temporarily controlled substance, is not referenced in the Drug Quantity Table or Drug Equivalency Table of Section 2D1.1 of the United States Sentencing Guidelines ("Guidelines"). 18 U.S.C. § 2D1.1. I held a hearing on December 11, 2015 to hear evidence on how XLR-11 should be considered at sentencing. On January 5, 2016, I heard argument on the role of Hossain in the instant offense, as well as § 3553 factors.

I.      **Background**

XLR-11 is a "synthetic cannabinoid."[1] Synthetic cannabinoids act on two receptors in the human body, CB1 and CB2, to cause a "high" similar to what users experience while consuming marijuana. XLR-11, like other synthetic cannabinoids, typically comes to the United States from China as a powder, which is then applied to plant materials to be smoked, or liquidated to be used in vaporizers. (DE 229, Tr. at 65). Synthetic cannabinoids laced on plant materials are often marked as "herbal incense" products and can be purchased online or at gas stations.

Reports of XLR-11 use in the United States began in the first half of 2012. Because XLR-11 appeared only three years ago in the United States, knowledge about XLR-11 is limited. (DE 217-4, *Acute Kidney Injury Associated with Synthetic Cannabinoid Use*). Information about the effects of XLR-11 is further limited because in the synthetic drug market it is common for the drugs to be replaced by new, unregulated chemicals once one synthetic has been regulated. By one account, products are available for only about twelve to twenty four months before they are replaced by the next, unregulated wave. (DE 217-8, *Pharmacology, Toxicology, and Adverse Effects of Synthetic Cannabinoid Drugs*).

XLR-11 was temporarily made a Schedule I substance by the DEA's emergency scheduling power in May 2013. 78 Fed. Reg. 23735 (May 16, 2013). Shortly before the two-year temporary period was scheduled to expire in May 2015, the temporary

---

[1] Other names for synthetic cannabinoids include "K2" and "Spice," which were names given to specific versions of early synthetic cannabinoids. Synthetic cannabinoids are also sometimes referred to as "synthetic marijuana." I use the term "synthetic cannabinoids" to refer generally to these drugs that are used to mimic the high from marijuana.

2

scheduling of XLR-11 was extended for an additional year, and the DEA moved to have XLR-11 placed permanently onto the Controlled Substances List. 80 Fed. Reg. 27611 (May 14, 2015); 21 U.S.C. § 811(h)(2). As of this date, XLR-11 is still temporarily scheduled under Schedule I. 21 C.F.R. § 1308.11.

## II. Sentencing Guidelines

### a. Drug Equivalency[2]

The sentencing issue presented in this case is that XLR-11 is not listed in either the Drug Quantity Table or Drug Equivalency table of § 2D1.1 of the Guidelines.

When determining the base offense level for a controlled substance not listed in the Guidelines, a court should use "the marihuana equivalency of the most closely related controlled substance referenced in this guideline." 18 U.S.C. § 2D1.1, Application Note 6. In determining the most closely related substance, a court should consider, "to the extent practicable":

> (A) Whether the Controlled Substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
> (C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

*Id.*

---

[2] As stated in open court on January 5, 2016, the following Drug Equivalency analysis—as well as my § 3553(a) analysis that relies on a discussion XLR-11—also applies to my sentences of Hossain's co-defendants, Ahmed Maher Elhelw and Ahmed Yehia Khalifa.

3

To determine the "most closely related controlled substance" to XLR-11, I held a hearing on December 11, 2015. At that time, the Government presented testimony from Dr. Jordan Trecki, a pharmacologist with the DEA. The Government argued, with the support of Dr. Trecki, that XLR-11 is most closely related to the controlled substance tetrahydrocannabinol ("THC"). THC is commonly known as the psychoactive ingredient in marijuana.

Hossain presented testimony from Dr. Nicholas Vito Cozzi, a pharmacologist and professor at the University of Wisconsin School of Medicine and Public Health, and Dr. Gregory Dudley, a chemist and a professor at Florida State University. Hossain argued, with the support of Dr. Dudley, that marijuana is the most closely related referenced controlled substance to XLR-11. Additionally, both Doctors Cozzi and Dudley took issue with Dr. Trecki's characterization of THC as the most closely related controlled substance to XLR-11, explaining the flaws in the research that Dr. Trecki relied upon in coming to his conclusions.

Based on the testimony and exhibits presented, I will address each of the Section 2D1.1 factors in turn.

**Factor A—Substantial Similarity:** All three experts agreed that, with regards to the first factor, that the chemical structure of XLR-11 is not similar to either marijuana or THC.

**Factor B—Efficacy:** The second factor to consider is whether the effect of XLR-11 is substantially similar to the effect of a referenced controlled substance. Dr. Trecki testified that the pharmacological effects of XLR-11 are most similar to THC. (DE 229, Tr. at 29). He explained that synthetic cannabinoids, like XLR-11, activate the CB1

receptor in the brain, which is the receptor responsible for the psychoactive properties of cannabinoids. (DE 229, Tr. at 67).

Dr. Trecki also testified about the results of a drug discrimination study, which he explained demonstrated that THC and XLR-11 were similar in effect:

> This is a study where you evaluate animals, where you give them the specific – the test drug, for example THC, and they learn a specific behavior. You then switch out the THC [for another drug] and you observe the behavior . . . So for example, in this case . . . [when animals were given XLR-11] the animals could not differentiate between XLR-11 and the THC.

(DE 229, Tr. at 68).

Dr. Trecki also compared XLR-11 to THC, explaining that because both XLR-11 and THC are single chemicals, unlike marijuana, XLR-11 is more closely related to THC than marijuana:

> The marijuana plant, as noted in many published peer review publications, has between 80 and 100 separate cannabinoids in the plant. It has between 500 and 800 different chemicals that make up a living organism in the plant called marijuana. When you look at drugs like XLR-11 . . . these are single manmade chemicals applied to inert, nonpsychoactive vegetable material.

(DE 229, Tr. at 36).

Finally, Dr. Trecki testified that "the hallucinogenic effects of XLR-11 on the central nervous system are substantially similar to THC." (DE 229, Tr. at 69).

Hossain's experts, Doctors Cozzi and Dudley, both challenged Dr. Trecki's conclusion, and testified that the pharmacological effects of XLR-11 were not necessarily analogous to THC. Dr. Cozzi explained that there were problems with Dr. Trecki's drug discrimination study that purportedly demonstrates that XLR-11 and THC are similar in effect. Dr. Cozzi opined that the sample size of rodents in the study was smaller than he

5

typically relied on with confidence, and that the results were not reproducible. (DE 229, Tr. at 98, 103).

Further, Dr. Dudley distinguished XLR-11 from THC in effect. He testified that, although XLR-11 binds to the CB1 receptor, as Dr. Trecki had testified, XLR-11 appears to bind more strongly to the CB2 receptor, which is not considered the "psychoactive receptor":

> A: XLR-11 binds more tightly, more strongly to the CB2 receptor than to the CB1 receptor.
> Q: In other words, more tightly to the one that would modulate pain as opposed to the one that gets you high; is that a way to say it?
> A: . . . [T]he one that's primarily located outside of the central nervous system that is not associated with getting you high . . .

(DE 229, Tr. at 183).

Dr. Dudley further testified that he believes XLR-11 is most closely related to marijuana in effect:

> Q: When people use marijuana and they get high, they are getting high because the THC?
> A: That's the consensus, yes.
> Q: . . . [B]ut marijuana, of course, is separately listed as a schedule one drug, correct?
> A: Yes.
> Q: And is marijuana then, in your opinion, appropriate or inappropriate to do the comparison with XLR-11?
> A: Given that one must choose one of the substances from the guidelines, I think marijuana is appropriate.

(DE 229, Tr. at 188-89).

**Factor C—Potency:** The third factor to consider is whether a lesser or greater amount of XLR-11 is needed to produce a substantially similar effect on the central nervous system as the most closely related referenced substance.

6

Dr. Trecki testified that a lesser amount of XLR-11 is needed to produce the effects of THC because "XLR acts in an increased manner" over THC. (DE 229, Tr. at 69). In fact, Dr. Trecki testified that, in one study, XLR-11 was "approximately four times as potent as THC." (DE 229, Tr. at 74).

Dr. Cozzi testified that he did not think one could make conclusions about XLR-11 potency in humans based on studies done on rodents because ". . . the [in] vivo animal studies are not reliable predictors of what a drug will produce in a human being." (DE 229, Tr. at 105). Further, he objected that the data relied on by Dr. Trecki is highly variable and is not reproducible. (DE 229, Tr. at 18). Dr. Dudley similarly testified that there was nothing in the literature that would support finding the XLR-11's potency is similar to THC. (DE 229, Tr. at 119).

Based on the testimony I heard on, I find that XLR-11 cannot be easily analogized to THC or to marijuana. While XLR-11 appears to have some of the same psychoactive effects as THC, the chemical structure is unique. The testimony from the experts on the second two factors—efficacy and potency—conflicts. However, because I am instructed by the Guidelines to choose a related substance, I am most persuaded by Dr. Trecki's testimony that the referenced controlled substance XLR-11 most closely relates to is THC. XLR-11, like THC, acts on the CB1 receptor, was found to be similar to THC in one drug discrimination study, and, like THC, is a single chemical.

### b. Guideline Range

Once I have determined the most closely related controlled substance referenced in the Guidelines, the Guidelines instruct that I should use the marijuana equivalency of the related substance to determine the base offense level.

7

According to the Drug Equivalency Table, the conversion ratio of THC to marijuana is 167:1. Thus, for the purposes of the Guidelines calculation, one gram of marijuana is equal to 167 grams of THC. The amount of XLR-11 that the Government attributes to Hossain, which Hossain did not dispute at the sentencing hearing, was 216 kilograms. Therefore, using the Drug Equivalency Table, Hossain is responsible for 36,072 kilograms of marijuana. This makes Hossain's base offense level 36. (DE 205 at ¶ 49).

The presentence investigation report filed as to Hossain calculates that Hossain should have eight offense points added to the base offense level: two offense points added pursuant to § 2D1.1(b)(12), another two points added pursuant to § 2D1.1(b)(15)(C), and four points added pursuant to § 3B1.1(a). Hossain also had three points detracted, pursuant to § 3E1.1(a) and § 3E1.1(b). (DE 205 at ¶¶ 50, 51, 53, 57, 58). At the sentencing hearing, I found that Hossain should have an adjustment for role in the offense, but that the adjustment should only be two points, pursuant to § 3B1.1(c).

Accordingly, Hossain's adjusted offense level is 39, his criminal history category is I, and his resulting Guidelines range is 262 to 327 months of imprisonment.

### III.   Variance

Although the federal sentencing statute requires that I give consideration to the Guidelines, the sentence should be tailored in light of other concerns. *See Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Booker*, 543 U.S. 220 (2005). After *Booker*, there is no presumption that the Guideline sentence should apply, and a variance from the advisory Guidelines may not be presumed unreasonable. *See Rita v. U.S.*, 551 U.S. 338, 351, 354-55 (2007). "A district judge must include the Guidelines range in the

array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing." *Kimbrough*, 552 U.S. at 91 (internal quotations omitted).

In the context of the crack-cocaine disparity, the Supreme Court in *Kimbrough* upheld a district court's decision to not apply the 100:1 crack-cocaine ratio when the ratio resulted in a sentence that was "greater than necessary" in light of the § 3553(a) factors. *Kimbrough*, 552 U.S. at 92. In fact, the Supreme Court has gone so far as to say in *Spears v. United States* that *Kimbrough* recognized a "district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreements with them . . ." 555 U.S. 261, 264 (2009). These cases rely on the post-*Booker* discretion of the district court to consider § 3553(a) and vary from the advisory Guidelines when the Guidelines do not fit the instant crime.

Accordingly, I will, and must, consider the § 3553(a) factors in determining whether a Guidelines sentence serves the objectives of sentencing. Factors I should consider under § 3553(a) include: the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to provide just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

Clearly, this is a serious offense. A 2012 study showed that eleven percent of high school seniors had used synthetic cannabinoids. A recent 2015 study from the same group shows that the number of high school seniors using synthetic cannabinoids had dropped to five percent. *See* Press Release, University of Michigan, Monitoring the Future, "Use of ecstasy, heroin, synthetic marijuana, alcohol, cigarettes declined amount US teens in 2015" (December 16, 2015). This speaks to the need to deter individuals


from dealing in these drugs; although on the decline, synthetic cannabinoids were once relatively commonplace among high schoolers, and dealers should be deterred from distributing these chemicals so that the numbers do not rise again.

According to the DEA's rulemaking in May 2015, there has only been one death tied to XLR-11. 80 Fed. Reg. 27611 (May 14, 2015). However, there have still been increased reports in harm from synthetic cannabinoids more generally and, because the information on synthetic cannabinoids is limited, considering synthetic cannabinoids together may give a more complete picture of the dangers and effects of these drugs. The Government submitted to the Court several articles that discuss case studies of individuals exhibiting complications after they have ingested some type of synthetic cannabinoid. A common trend of these articles shows that individuals who have been hospitalized following synthetic cannabinoid use present kidney injury. *See* DE 217-2, Letter to the Editor from Doctors of Emergency Medicine; DE 217-4, "Acute Kidney Injury Associated with Synthetic Cannabinoid Use—Multiple States, 2012," Morbidity and Mortality Weekly, February 15, 2013.

However, despite the potential dangers of synthetic cannabinoids, and the clear need for deterrence, I believe the Guidelines range for the instant offense fails to achieve the goals of sentencing.

For starters, I am not convinced that THC is a particularly relevant substitute for XLR-11. Based off of the testimony I heard, I believe synthetic cannabinoids need their own category in the Drug Equivalency Chart in order to account for the differences between XLR-11 and THC. But, in the absence of an amendment to the Guidelines, I will use the THC Guideline range as a starting point.

In considering the THC to marijuana ratio, I find it troubling that there does not seem to be any reason behind the 1:167 ratio. Although I asked each of the experts at the hearing, no one could provide me with a reason for this ratio, which has major implications in determining the base level offense. After my own research and a phone call to the Sentencing Commission, I still could find no basis for this ratio. It appears to have been included in the first set of Guidelines in 1987, with no published explanation. While a sentence must reflect the seriousness of the offense to provide just punishment, a sentence based on a range that seems to have no cognizable basis is not just.

At the hearing, I heard testimony from Dr. Cozzi regarding a more appropriate ratio for THC to marijuana:

> [S]aying that one gram of THC is equal to 167 grams of marijuana is like saying 167 grams of marijuana contains a gram of THC. That's what equivalence means. But if you calculate what percentage of THC that is on the weight, you take the one [and] divide it by 167, you get 0.6. So 0.6 percent of the total weight [of the marijuana] is THC. That's completely unrealistic in terms of psychoactive marijuana. We know from Government studies that the average THC content in marijuana today is over 14 percent. So the ratio should be one to seven, not one to 167.

(DE 229, Tr. at 116-17).

I find this ratio to be better founded than the 1:167 ratio that no one could explain, as it reflects the actual amount of THC in marijuana today. Although I will not rewrite the Guidelines and apply this ratio for THC, this lower ratio is persuasive as to why the current Guideline range fails to provide just punishment for this offense. If I were to use a 1:7 ratio, the amount of XLR-11 Hossain's charged with—216 kilograms—would be equivalent to 1,512 kilograms of marijuana. This would make his base offense level 30 under the Guidelines. When including the adjustments for Hossain's offense level,

11

discussed *supra*, Hossain's sentence range—using an offense level of 33 and a criminal history category of I—would be 135 to 168 months.

This sentence range is more reasonable than the sentence that the Government suggests I impose, based off the 1:167 ratio. The Government's proposed sentence would mean Hossain starts at the same base offense level as a dealer distributing 167 times more marijuana, a dealer or distributor of 30 to 90 kilograms of heroin, or a dealer or distributor of 150 to 450 kilograms of cocaine. This hardly seems to account for the relative dangers of this crime. Crack cocaine offenses are twice as likely to involve a gun than marijuana offenses. *See* Drug Offenders in Federal Prison: Estimate of Characteristics based on Linked Data, Bureau of Justice Statistics, October 2015. Further, the relative harm from use of XLR-11 does not reach the level of harm from overdoses of cocaine or heroin. As stated previously, the DEA report only lists one known death due to XLR-11.[3] In contrast, in 2014 there were 5,415 reported deaths from cocaine in the United States. *See* "Overdose Death Rates," National Institute of Drug Abuse, December 2015. That same year there were 10,574 reported deaths from heroin in the United States. *Id.*

Additionally, I find the newness of the regulation of XLR-11, as well as the infancy of our understanding of the effects of XLR-11 and other synthetic cannabinoids, to be relevant to determining Hossain's sentence. XLR-11 was first temporarily scheduled in May 2013. In January 2015, Hossain told DEA agents that in 2012, prior to XLR-11 being scheduled, he worked at his father's store where synthetic cannabinoids

---

[3] While Dr. Trecki testified regarding other deaths related to synthetic cannabinoids, it is unclear how many deaths there have been and whether the chemicals present in those cases are similar to XLR-11.

were sold. Hossain also stated that in May or June of 2012 Hossain and his wife began working at a warehouse that packaged these drugs. All of this conduct occurred prior to XLR-11 being temporarily scheduled and—at least initially—Hossain was unlikely to appreciate the seriousness of his conduct.

Although Hossain was eventually put on notice that XLR-11 was illegal, I find it relevant to Hossain's culpability that XLR-11 was intended to serve as a replacement for marijuana. Due to the relative infancy of knowledge about synthetic cannabinoids, and XLR-11 in particular, it is unlikely that Hossain or his co-defendants knew the dangers of the synthetic cannabinoids when they were engaged in the instant conduct. If Hossain thought this substance was like marijuana, because it created a high similar to marijuana, he likely believed it posed no more danger than marijuana. Furthermore, Hossain was unlikely to be aware that the substance was, in fact, more dangerous and more severely punished than marijuana. In 2013, the average sentence length of marijuana traffickers was 39 months. *See* Quick Facts: Marijuana Trafficking Offenses, United States Sentencing Commission, 2013. In this case, had I treated XLR-11 as marijuana, Hossain would have been subjected to a sentence of 70 to 87 months.

While I don't find that marijuana is the appropriate substance to compare XLR-11 to—due to the testimony and articles presented about the dangers of XLR-11—I do believe it is relevant when considering whether Hossain appreciated the dangers of the drug with which he was importing. I find that the goals of sentencing, particularly punishment and deterrence, are not achieved by sentencing Hossain to upwards of thirty years in prison for dealing in a substance that was intended to mimic marijuana and so

13

new that only a few years before his arrest it was being sold in gas stations and convenience stores.

Additionally, in considering the other § 3553 factors, I find persuasive that Hossain had no prior criminal history and the instant offense was non-violent.

### IV. Conclusion

Although THC is the closest controlled substance to XLR-11 that is currently referenced in the Guidelines, I do not find the Guidelines range for THC particularly helpful in calculating Hossain's sentence. The Guidelines Range yields a sentence that is "greater than necessary" to achieve § 3553(a)'s purpose. I am dissuaded from sentencing Hossain within the Guideline range because not one expert could provide any scientific basis for the 1:167 ratio for comparing marijuana to THC. Additionally, the nature of this offense, particularly the newness of the regulation of this drug, persuades me that varying downward is necessary. Furthermore, Hossain's lack of any criminal history persuades me that a within-Guidelines range would be "greater than necessary" to achieve any sentencing goals.

Accordingly, for reasons stated in this memorandum and in open court, I sentence Saiful Hossain to 120 months imprisonment, to be followed by three years of supervised release.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 5 day of January, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of record